The People of the State of New York, Respondent, *v.* Michael E. Reiburn, Appellant.

First Department, April 1, 1938.

*Philip C. Samuels* of counsel [*Benjamin F. Fanger*, attorney], for the appellant.

*Ezekiel G. Stoddard* of counsel [*Thomas E. Dewey, District Attorney*], for the respondent.

UNTERMYER, J.  The defendant was tried on an indictment containing two counts charging grand larceny in the first degree, only the second of which, however, charging the defendant with feloniously appropriating as agent, bailee and trustee the property of one Eugene Meyer, was submitted to the jury.  The jury rendered a verdict of guilty.

The defendant rested on the evidence offered by the People, which consisted of the testimony of Meyer, corroborated by the testimony of his wife.  Meyer testified that in May, 1927, he was arrested with one Charles Oman on a charge of falsely reporting the loss of a car owned by Meyer to the General Exchange Insurance Company and receiving payment for the loss.  After their arrest, Meyer and his codefendant employed the defendant as their attorney and paid $1,250 on account of legal services to be rendered. It was agreed, however, that the defendant should receive additional compensation " as the case went on, depending upon how much he had to go to court," although the exact amount was not specified. As to this Meyer testified: " He [the defendant] just wasn't sure how long the case would be and how much more proceedings would be, but that maybe another $1,000; he wasn't sure, though."

Meyer testified that it was suggested by the defendant that the insurance company, the complainant in the criminal proceedings then pending against Meyer and Oman, might not press the charge if restitution of $1,000 were offered in adjustment of the claim. Accordingly, on June 9, 1927, Meyer and his wife deposited $1,000 in cash at the defendant's office, for which the defendant's secretary, and subsequently the defendant, signed a receipt as follows: " Receipt is acknowledged from Eugene Meyer of the sum of One thousand ($1,000) Dollars to be used as restitution in the above matter in the event that restitution is required.  If restitution is not required or acceptable, the said sum is to be returned to Eugene Meyer."

It is clear beyond the possibility of contradiction that the defendant in good faith attempted to prevail on the insurance company to accept restitution of the $1,000 thus received.  Meyer testified that he discussed the matter with the defendant from time to time and observed the defendant in conversation with a representative of the insurance company.  He testified further that the representative of the insurance company reported to him that the defendant

had offered restitution, but that the company had declined to accept it except with the consent of the court.

In the meantime there were hearings in the Magistrates' Court, in which the defendant represented Meyer and Oman, both of whom were held for the grand jury and indicted. The defendant subsequently appeared for Meyer and Oman in the Court of General Sessions and was present on October 20, 1927, at which time Meyer pleaded guilty to attempted grand larceny in the second degree. There is no evidence that on that occasion the question of restitution was referred to or considered. On that day the matter of sentence was adjourned to December 5, 1927, and thereafter, from time to time, until February 5, 1929, when Meyer received a suspended sentence after making restitution of $997 through the probation department, though not out of the funds deposited with the defendant. This restitution was made with the approval of the court and no doubt influenced the court in suspending sentence.

According to Meyer the defendant was not present on December 5, 1927, but had sent an assistant, who submitted a letter to the court stating that he was in a sanitarium. This appears to have been the first occasion when the question of restitution was suggested to the court. Meyer, however, did not see the defendant after October 20, 1927, nor is there any evidence of any demand upon the defendant to apply the $1,000 held by him to the payment of restitution; nor that the defendant, whose offer of restitution to the insurance company had been declined, was aware that after Meyer had pleaded guilty the court had authorized restitution to be made. The only proof relating to these facts is that Meyer visited the defendant's office on several occasions without finding him.

The question, then, is whether the defendant, apparently not aware that the offer of restitution, which had been declined by the insurance company, had subsequently received the approval of the court, was justified in applying the $1,000 deposited with him to the payment of his compensation. This, of course, depends on the understanding between Meyer and the defendant, for there could be no unlawful appropriation of the $1,000 if it was applied in accordance with the agreement under which it was held. On that issue Meyer's testimony conclusively establishes that after June 9, 1927, when the $1,000 was received by the defendant, it was agreed that if restitution was not accepted by the insurance company it was to be applied by the defendant to the payment of compensation for legal services. Meyer testified: " Q. Didn't he specifically tell you that the fees that he was to receive from you would be in the neighborhood of $2,000 to $2,500 in these cases?

A. He says that is the way these cases run; I don't remember. * * * Q. You wouldn't say that it was not $2,000 to $2,500, would you? A. No, I couldn't say that truthfully. * * * Q. So that there is no question in your mind that the extra money was beyond the retainer of $1,250? A. Yes. * * * Q. Whatever the time was after June 9th when you were told that the insurance company would not make any adjustment, did you and Mr. Reiburn have a discussion wherein he was to apply that $1,000 on account of his fees? A. Well, as I said before, I knew there was to be an extra charge, and I naturally assumed that if the restitution was not acceptable I had money there to pay for that extra charge. Q. And that the $1,000 which was left with Mr. Reiburn would be used by him on account of that extra charge? A. It would come to that conclusion. * * * Q. There is not any question about that, is there? A. There is no question about that in my mind that if the restitution was not accepted, I could apply that to the balance of the fee."

Upon this state of facts it cannot be said that the defendant was guilty of misappropriating his client's property. He applied it in exact accord with the instructions of his client without notice that restitution, which had previously been rejected, was then acceptable, and without any demand that he apply it differently. To this state of facts the language of the court in *McCourt* v. *People* (64 N. Y. 583, 588) is fully applicable: " To find this transaction a larceny it is necessary to override the ordinary presumption of innocence and to reject a construction of the prisoner's conduct, which accounts for all the circumstances proved without imputing crime, and to impute a criminal intention, in the absence of the earmarks which ordinarily attend and characterize it."

The judgment of conviction should be reversed and the indictment dismissed.

MARTIN, P. J., O'MALLEY, TOWNLEY and GLENNON, JJ., concur.

Judgment unanimously reversed and the indictment dismissed.